The document below is hereby signed.

Signed: December 30, 2017



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CARLOS ROBERTO ALLEN, | ) | Case No. 16-00023 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DOUGLASS SLOAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 16-10027 |
| CARLOS ROBERTO ALLEN, | ) | |
| | ) | Not for publication in |
| Defendant. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER DENYING
DEFENDANT'S MOTION FOR RECONSIDERATION

The defendant has filed a timely *Motion for Reconsideration*

*of Judgement of Sept. 21, 17* (Dkt. No. 79) ("*Motion*") pursuant to

Fed. R. Bankr. P. 9023, which will be treated as a Fed. R. Civ.

P. 59(e) motion to alter or amend the court's judgment entered on

September 21, 2017. For the reasons that follow, the defendant's

*Motion* will be denied.

I

FACTS

On June 6, 2016, the plaintiff, Douglass Sloan ("Sloan"),
commenced this adversary proceeding, seeking to have the court
treat the debtor's outstanding obligation to him pursuant to a
*Promissory Note with Equity Interest Conversion Feature* (the
"*Sloan Note*") as nondischargeable, or, alternatively, deny Allen
a discharge.  While the court's findings of fact have been
detailed extensively in the *Memorandum Decision* (Dkt. No. 75)
issued after the trial, the court will briefly restate facts
relevant to resolution of this *Motion*.

The debtor, Carlos Allen ("Allen"), Sloan, and Karen James
(then Sloan's girlfriend and now Sloan's wife) executed the *Sloan
Note* on July 23, 2008.  Under the terms of the *Sloan Note*, the
Sloans agreed to loan Allen $60,000.  Allen agreed to repay
$72,000 within 60 days, with interest accruing thereafter at the
highest rate permitted under District of Columbia law if Allen
failed to make the payment by the 60-day deadline.  When the
*Sloan Note* came due 60 days after its execution, Allen failed to
repay the debt.  For some time, he made no payments at all.
After continued prompting from Karen Sloan, on November 6, 2010,
Allen began making monthly payments on his outstanding debt to

the Sloans, first in the amount of $1,000 and then in the amount
of $500.

Allen sold the Property for $1,015,000 on August 2, 2013.
Upon the sale of the property, Allen did not pay the Sloans any
portion of the sales proceeds.  Rather, after he used $628,867.08
of the proceeds of the August 2, 2013, sale to pay off a first
mortgage and cover various closing costs, $311,900 of the sales
proceeds were distributed to three contractors, "AMG", and
someone named David Williams, who in return gave Allen a tour bus
to use to promote Allen's rap career.  Allen continued making his
regular $500 monthly payments towards the outstanding debt to the
Sloans until March 10, 2014, at which time he stopped making
payments.  Although Allen made payments under the *Sloan Note* over
the course of years, a substantial amount of the debt remains
outstanding.

A trial was held on July 14, 2017, and the court issued a
*Memorandum Decision* (Dkt. No. 75) and a judgment (Dkt. No. 76)
denying the debtor a discharge pursuant to 11 U.S.C. § 727(a)(3)
and 11 U.S.C. § 727(a)(4)(A).  Allen testified that his
distribution of $270,000 of the proceeds of the sale of the
property to AMG, Inc. ("AMG") was a disbursement in satisfaction
of a loan he claims Karen Brooks, his estranged wife, made to him
in 2005 pursuant to a promissory note.  Not until six months

3

after Sloan commenced this adversary proceeding did Allen allege
the existence of this prior loan and produce a promissory note
(the "*Brooks Note*") to support that allegation.  According to the
*Brooks Note*, on September 23, 2005, almost three years before
Allen and the Sloans entered into their loan agreement, Karen
Brooks, Allen's wife, loaned him $102,000, bearing interest at
20% per annum, compounded monthly.  *See* Dkt. No. 27, at Ex. H.
The *Brooks Note* purports to grant Brooks a security interest in
the Property as collateral to secure repayment of the alleged
loan.

     For the reasons discussed at length in the *Memorandum
Decision* (Dkt. No. 75) related to the judgment in this adversary
proceeding, I found that Allen fabricated the *Brooks Note*, which
represented a non-existent loan made to him by his estranged
wife, Karen Brooks, and which (if the *Brooks Note* had been
genuine) was a document from which his financial condition and
business transactions might be ascertained.  Because the
falsification of the document was not justified, I denied the
debtor a discharge pursuant to 11 U.S.C. § 727(a)(3).  In
addition, the debtor falsely testified that his transfer to AMG,
Inc. of proceeds of the sale of real property was made in
satisfaction of the *Brooks Note*, in a fraudulent attempt to
defend against Sloan in the adversary proceeding.  On the basis

of such false oath, I denied Allen a discharge pursuant to 11
U.S.C. § 727(a)(4)(A).

As such, none of the debtor's debts, including his debt to
Sloan (including any prejudgment interest owed plus reasonable
attorney's fees, and postjudgment interest that Allen may recover
in the pending Superior Court action) will be discharged.  A
judgment was thus issued denying the debtor a discharge on those
two bases.  *See* Dkt. No. 76.  Allen then filed his *Motion* seeking
reconsideration, which will be treated as a Fed. R. Civ. P. 59(e)
motion to alter or amend a judgment.

II

LEGAL STANDARD

The court need not grant a Rule 59(e) motion unless there is
an intervening change of controlling law, new evidence is
available, or there is a need to correct a "clear error or
manifest injustice."  *See Anyanwutaku v. Moore*, 151 F.3d 1053,
1057 (D.C. Cir. 1998) (quoting *Firestone v. Firestone*, 76 F.3d
1205, 1208 (D.C. Cir. 1996) (per curiam)).  Moreover, "a losing
party may not use a Rule 59 motion to raise new issues that could
have been raised previously."  *Kattan by Thomas v. District of
Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993), *cert. denied*, 511
U.S. 1018 (1994).

A Fed. R. Civ. P. 59(e) motion for reconsideration, brought in bankruptcy cases pursuant to Fed. R. Bankr. P. 9023, exists to allow a party to present newly-discovered evidence to the court or to correct a manifest error of law or fact in the court's judgment. *See, e.g., Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986); *Reich v. Compton*, 834 F.Supp. 753, 755 (E.D.Pa. 1995), *aff'd in part & rev'd in part*, 57 F.3d 270 (3d Cir. 1995); *Public Citizen, Inc. v. Resolution Trust Corp.*, No. Civ. A. 92-0010, 1993 WL 1617868, at *6 (D.D.C. March 19, 1993).

> When the motion for a new trial is based on a claim of newly discovered evidence, the movant is required "to rebut the presumption that there has been a lack of diligence." Based on this requirement, it has been held that "[s]ubsequent discovery of the importance of evidence which was in the possession of the applicant for a new trial, at the time of trial, does not entitle him to a new trial upon the ground of newly discovered evidence."

*Bedell v. Inver Housing, Inc.*, 506 A.2d 202, 207 (D.C. 1986) (quoting *United States v. Bransen*, 142 F.2d 232, 235 (9th Cir. 1944))(internal citation omitted). *See also Johnson v. Hobson*, 505 A.2d 1313, 1320 n.10 (D.C. 1986) (quoting *Bransen*, 142 F.2d at 235).

III

NO RECONSIDERATION BASED ON ATTACHMENTS TO ALLEN'S *MOTION*

In his *Motion*, Allen argues that the court erred in finding that he had fabricated the *Brooks Note* and that he had lied that his transfer of $270,000 to AMG was in repayment of a loan from his estranged wife.  In an attempt to demonstrate that he did not falsify the *Brooks Note*, Allen attached a new copy of the note to his *Motion*.  *See* Dkt. No. 79, Ex. 1.  This copy, unlike the version he submitted to the court multiple times throughout the course of the adversary proceeding (*see* Dkt. No. 27, Ex. H; Dkt. No. 33, at 31-32; Trial Ex. 20), has three pages.  Until Allen filed his *Motion* now pending before the court, all parties and the court had only seen the first and third page of the *Brooks Note*, each page respectively numbered "1" and "3" and notably skipping numbered paragraphs four through nine.  The version Allen submitted with his version now has the second page, numbered "2" and containing paragraphs four through nine.

Allen also attached a number of other documents to his *Motion* that he claims he recovered from Karen Brooks after the court issued its judgment on September 21, 2017.  Those documents include: (1) a letter from MBNA America confirming Karen Brooks's creation of a line of credit account and noting a pending $25,000 transfer to a Bank of America account, (2) a receipt of an

7

$80,000 wire transfer from Karen Brooks's account at SunTrust
Bank to a Bank of America account with the beneficiary noted as
"AFF Mortgage Inc", (3) a bank statement from what appears to be
Karen Brooks's bank account at Bank of America detailing
transactions spanning from August 15, 2005 through September 27,
2005, (4) photocopies of receipts of three checks written from
Karen Brooks to Carlos Allen between August 25, 2005, and
December 8, 2005, and (5) a collection of various bills and
invoices for labor and goods seemingly purchased on behalf of the
mortgage company Karen Brooks and Carlos Allen ran together, AFS
Mortgage and Contracting Inc. ("AFS").  For the reasons that
follow in Part A below, the court declines to reconsider its
judgment based on the documents attached to Allen's *Motion* due to
Allen's failure to rebut the presumption that he failed to act
with due diligence to locate and present those documents prior to
trial.  Additionally, as described at length in Parts B and C
below, even if the court were to consider such documents the
contents of those documents do not justify reconsideration of the
judgment.

> A.   Allen Failed to Act with Due Diligence Prior to Trial
>      and Will Not Now be Allowed to Present the Documents
>      for the Court's Consideration.

Allen explained his new submission of these documents in his
*Motion*, saying: "Had the debtor known that the validity of the

8

Karen Brooks not [sic] was in question, he would had [sic]

searched for the documents at his residence or contacted Karen

Brooks like he did after the decision on Sept. 21, 2017 and

produced documents, confirming the payout of One Hundred Two

Thousand ($102,000.00) dollars on behalf of the Brooks Note paid

from Karen Brooks to Carlos Allen." Dkt. No. 79, at 3.  Then,

when Allen filed a reply to the plaintiff's opposition to his

*Motion*, he renewed the argument, stating:

> As Debtor has argued since the beginning of this matter,
> he was not aware that he would be required to prove the
> validity of the Note between himself and Karen Brooks.
> He erroneously and understandably thought that presenting
> the Brooks Note in and of itself would be sufficient
> enough to prove the existence of the Note.  The Note was
> executed and signed by both parties of their own free
> will, so Debtor understandably, as a Pro Se Litigant,
> would have no reason to believe that presenting the Note
> would be insufficient to prove the existence of the Note
> and there would be any questions of its validity.

Dkt. No. 82-1 ¶ 2.  However, in the very next paragraphs of the

reply, Allen changed his explanation, saying:

> At the time of the hearing on this matter, Debtor did not
> know of the existence of any documents to support the
> validity of the Brooks Note.  He asked Karen Brooks about
> the existence of any documents; however, she stated to
> the Debtor that she could not find any other
> collaborating documents. . . . He was told by Ms. Brooks
> that no other documents existed, and he was not in
> possession of any documents to support the validity of
> the Note. . . . [W]hen Debtor asked Ms. Brooks about
> whether she was in possession of any documents to support
> the Note, Ms. Brooks stated that she was not in
> possession of any other documents other than the 2005

Note, and could not find any other documents to support
the 2005 Note.  Debtor was left with no choice but to
accept this statement, especially since he could not go
through Ms. Brooks' personal bank accounts himself.

Dkt. No. 82-1 ¶¶ 3, 5.

"When the motion for a new trial is based on a claim of
newly discovered evidence, the movant is required 'to rebut the
presumption that there has been a lack of diligence.'"  *Bedell v.
Inver Housing, Inc.*, 506 A.2d 202, 207 (D.C. 1986) (quoting
*United States v. Bransen*, 142 F.2d 232, 235 (9th Cir. 1944)).  In
neither his *Motion* nor his reply to the plaintiff's opposition
did Allen offer any explanation of why he failed to present the
second page of the *Brooks Note* until now.  Thus, he has not
rebutted the presumption that he failed to act with the requisite
diligence in locating the second page of the *Brooks Note*.  For
that reason, the court will not consider the second page of the
*Brooks Note* or reconsider its judgment based on the contents of
that page.

Similarly, the court also will not reconsider its judgment
based on the other documents attached to Allen's *Motion* due to
Allen's failure to rebut the presumption of lack of due diligence
in locating those documents and presenting them to the court for
consideration prior to the trial.  In his *Motion*, Allen stated
that he neglected to ask Karen Brooks for those documents because

10

he was unaware that he would need those documents to demonstrate the validity of the *Brooks Note* at trial.  In his reply to the plaintiff's opposition, in contrast, Allen stated that he asked Karen Brooks prior to the trial for any documents supporting the validity of the *Brooks Note* and she said none existed in her possession and he likewise had none in his possession.  However, within two weeks of receiving a judgment against him, Allen was able to procure various financial records that he claims support the validity of the *Brooks Note*, especially the provisions contained in the second page of the *Brooks Note* that he also newly presented to the court with his *Motion.*

Instructive in this context is *Jay Edwards, Inc. v. New England Toyota Distributor, Inc.*, 708 F.2d 814, 824-25 (1st Cir. 1983), in which the First Circuit concluded that the party moving for reconsideration had failed to show due diligence because the "new evidence" presented by the movant consisted of computer printouts that former employees had in their possession prior to trial.  The court noted: "[w]e cannot be impressed by the diligence of a party that fails to uncover evidence during four years of discovery that it manages to retrieve four weeks after losing the lawsuit." *Id.* at 825.  It is unclear which of Allen's excuses for not presenting these documents prior to trial is the true reason for his failure to produce the documents, but the

11

court presumes the first excuse, that he did not think to ask
Karen Brooks, is the true reason.   Considering the gravity of the
claims contained in Sloan's nondischargeability complaint, Allen
should have exercised due diligence in locating all available
evidence to support his defense.   As detailed in the court's
*Memorandum Decision* (Dkt. No. 75) related to the judgment in this
adversary proceeding, Allen had sufficient notice that Sloan
disputed the existence of the *Brooks Note*.   Allen's failure to
seek out all available documents to demonstrate the existence of
the *Brooks Note* cannot be remedied by his presenting documents
now with a motion for reconsideration after judgment has been
entered against him.

Likewise, his second excuse, that Karen Brooks only located
the documents after the trial, does not rebut the presumption of
Allen's failure to exercise due diligence.   First, if it is true,
as he claims in his reply, that he asked Karen Brooks for
documents supporting the *Brooks Note* prior to the trial, then
this disproves his previous argument that he was unaware that the
validity of the *Brooks Note* was in question.   Second, while *Allen*
states in his reply (Dkt. No. 82-1 ¶ 9) that "[a]fter review of
the judgment, meticulous investigations were executed which
resulted in the new evidence submitted in Debtor's
Reconsideration request[,]" the court, similar to the First

12

Circuit in *Jay Edwards, Inc.*, 708 F.2d at 824-25, does not find credible or "impressive" Allen's argument that Karen Brooks could not locate the documents in the year that elapsed between the filing of the adversary proceeding and the trial but was able to find it less than two weeks after Allen received an unfavorable judgment.

Third, the court does not find credible Allen's argument that he had no personal access to any records substantiating the *Brooks Note* and the existence of a $102,000.00 loan to him from Karen Brooks if such records exist. To offer just one example, Allen attached to his *Motion* a receipt of an $80,000 wire transfer from Karen Brooks's account at SunTrust Bank to a Bank of America account with the beneficiary noted as "AFF Mortgage Inc". In his *Motion*, Allen claims that "[f]unds in the amount of $80,000.00 were wire transferred from Karen Brooks' personal Suntrust account into Carlos Allen's AFS Mortgage (AFS was an S Corporation) Bank Account." Dkt. No. 79, at 2. Allen has not addressed whether, prior to or after the trial, he sought records demonstrating that he received such a wire transfer from Karen Brooks. If he failed to do so, Allen has not attempted to explain why. Because Allen has failed to rebut the presumption that, prior to the trial, he did not act with due diligence to seek out and present what he now claims to be "new evidence" the

13

court declines to reconsider its judgment based on the contents

of any attachments to his *Motion for Reconsideration.*

      B.    Even if the Court were to Consider the Second Page of
the *Brooks Note* Attached to Allen's *Motion*, the Contents of
that Page Would Not Justify Reconsideration.

The second page of the *Brooks Note* newly submitted by Allen

with his *Motion* generally conforms to the rest of the *Brooks Note*

in content and format.  However, the essential paragraph

emphasized by Allen in his motion, paragraph 8, is different in

format.  Every other numbered paragraph has one heading, followed

by elaboration.  Paragraph eight has two headings: "AMENDMENTS"

and "ADDITIONAL PROVISIONS".  The "ADDITIONAL PROVISIONS" portion

contains the information that is relevant to Allen's argument:

> Karen Brooks obtained the money for Carlos Roberto
> Allen & Anna Allen by taking funds from her Cash Out
> Retirement fund from her employer.
> The borrower will pay off the following loans:
> Loan #1 - MBNA, account # 7498 4823 9332 43, $25,000.00
> Loan #2 - SunTrust, account # 052511403530, $78,000.00

Dkt. No. 79, at 10 (a portion of Dkt. No. 79, Ex. 1).  Notably,

after Sloan argued in his opposition to Allen's *Motion* that

paragraph 8 was internally inconsistent because she must have

either taken out both of those loans or taken money out of the

retirement account and it could not be that both were true, Allen

wrote in his reply that "[w]hile Ms. Brooks was going to

initially take the money out of her retirement, she changed her

14

mind and instead obtained monies from MBNA (in the amount of $26,500.00) and SunTrust (in the amount of $80,000)." Dkt. No. 82-1 ¶ 7.  This explanation does not make sense when section 8 is written in the past tense, noting that Karen Brooks had already obtained the money from the Cash Out Retirement fund when the *Brooks Note* was signed, rather than in the future tense, noting that Karen Brooks intended to lend the money by obtaining funds in the future from MBNA and SunTrust.

Furthermore, the terms of the repayment plan highlighted by Allen in his *Motion* contradicts paragraphs 1 and 2 of the *Brooks Note*, located on the first page of the note.  Paragraph 1 of the *Brooks Note* states that Allen will "pay to the Lender the total amount of One Hundred Two Thousand ($102,000.00), together with interest payable on the unpaid principal at the rate of 20% percent per annum, compounded monthly" and paragraph 2 of the *Brooks Note* states that the total amount and any accrued interest would be paid by November 10, 2005 (forty-eight days after the *Brooks Note* was allegedly signed).  Ex. 1 to Allen's *Motion*, attached at p. 9 of Dkt. No. 79.

Thus, the first two paragraphs say Allen would pay $102,000.00 plus accrued interest, at a rate of 20% per annum, compounded monthly, by November 10, 2005, whereas paragraph 8 says Allen would repay two loans for Karen Brooks with principals

15

that total $103,000.00 and presumably with interest rates set by

the institutions that offered such loans (if the SunTrust

transfer was indeed a loan and not a transfer of funds from a

checking account, as will be discussed in the next section).  The

contradictory language of paragraph 8, newly submitted by Allen,

appears to help the arguments he is now making and the documents

he is now presenting, but notably contradicts other terms of the

*Brooks Note* and other claims Allen has made over the course of

this adversary proceeding.  Moreover, the bank records submitted

by Allen with his *Motion* reflect a $379 payment made from Karen

Brooks's account in payment of an MBNA America bill on September

27, 2005, four days after Allen and Karen Brooks allegedly signed

the *Brooks Note*.  Thus, the court looks dubiously upon the *Brooks

Note* and its paragraph 8 provision that Allen would make payments

on the MBNA America loan.  For all of these reasons, the version

of the *Brooks Note* Allen attached to his *Motion* actually supports

the court's findings that: (1) Allen's allegations regarding the

validity of the *Brooks Note* and the character of the $270,000

transfer to AMG as a repayment of a loan made by his wife are not

credible, and (2) the *Brooks Note* was falsified by Allen in

pursuit of justifying his transfer of sales proceeds to AMG and

to achieve a discharge of his debts through bankruptcy.

C. The Other Documents Allen Attached to his *Motion* to
Support the Validity of the *Brooks Note*, Especially the
Provisions Contained on the Newly Submitted Second Page,
even if Considered by the Court in Revisiting its Judgment,
Would Not Impact the Court's Judgment.

The second exhibit attached to Allen's *Motion* is a letter to
Karen Brooks by MBNA America, dated August 22, 2005, noting the
approval of her MBNA America account, referred to as a
"GoldReserve® line of credit account[,]" and referencing a
$25,000.00 transfer of funds to Bank of America.  *See* Dkt. No.
79, at 12.  The third exhibit, erroneously labeled "Exhibit 4"
rather than "Exhibit 3", is an "ADVICE OF WIRE TRANSFER DEBIT(S)"
from SunTrust Bank, mailed to Karen Brooks, noting the September
28, 2005, transfer of $80,000.00 from SunTrust account number
1000039077812 to a Bank of America account, the beneficiary of
which is noted as "AFF MORTGAGE INC".  *See* Dkt. No. 79, at 13.
It is unclear from the document whether that wire transfer to an
AFS Mortgage Bank of America account was a transfer of funds from
a SunTrust checking or savings account or was a transfer of funds
in the form of a credit loan, similar to the one extended by MBNA
America.  It appears on its face to be a wire of funds already
held by Karen Brooks in her SunTrust account.  Regardless, in
light of the court's doubts regarding the validity of the *Brooks
Note*, neither of these two exhibits presents sufficient evidence
that Karen Brooks indeed made a loan to Allen.  As Sloan wrote in

17

his opposition (Dkt. No. 81 ¶ 13), this could just as easily be
evidence of Karen Brooks moving money as needed for her and Allen
to operate AFS Mortgage, the mortgage company she and Allen owned
and operated together.

The fourth exhibit attached to Allen's *Motion* are records of
banking transactions from a Bank of America checking account
belonging to Karen Brooks. *See* Dkt. No. 79, at 14-16. These
pages, like many other exhibits submitted by Allen throughout the
course of this adversary proceeding, contain his personal
notations, including information he wishes the court to know in
regards to the exhibits. Some entries he notes are: (1) August
26, 2005, "Check 2124" in the amount of $500.00, (2) August 30,
2005, $25,000.00 deposit from MBNA America, and (3) August 30,
2005, "Check 2127" in the amount of $20,000.00. Dkt. No. 79, at
14.

Allen attached copies of receipts of Check 2124 and Check
2127 to his *Motion* as well. *See* Dkt. No. 79, at 17-18. The
writing is very faded and not all of the writing on the check can
be read. Check 2124 appears to have been written to Carlos Allen
in the amount of $500.00 on August 25, 2005, as reflected in the
bank records. *See* Dkt. No. 79, at 17. There appears to be a
note in the bottom left corner of the check but the only
decipherable word is "LOAN". Check 2127 also appears to have

18

been written to Carlos Allen, this time on August 30, 2005, in the amount of $20,000.00, as reflected in the bank records. *See* Dkt. No. 79, at 18.  Check 2127 also has a note in the bottom left corner that is difficult to decipher.  It appears to say: "Loan for 30 days".  Allen also attached a copy of a third check, Check 2165 (Dkt. No. 79, at 19), which appears to have been written to him on December 8, 2005.  Allen has indicated in his own writing on that photocopy that the check was in the amount of $1,720.00, but the actual receipt is not sufficiently decipherable in the photocopy version for the court to verify the amount.

Check 2127 is notable because Allen claims that this $20,000.00 check was part of the $102,000 loan made to him by Karen Brooks.  However, the notation on the check presents yet another contradiction of the terms of Karen Brooks's purported loan to Allen.  According to paragraphs 1 and 2 of the *Brooks Note*, Allen was to pay $102,000 plus accrued interest at a rate of 20% per annum, compounded monthly, by November 10, 2005. According to paragraph 8 of the *Brooks Note*, newly presented to the court after the trial in Allen's *Motion*, Allen was to repay Karen Brooks by paying off two loans taken out by Karen Brooks, totaling $103,000, presumably at the interest rate set by the institutions that made the loans.  According to the check from

19

Karen Brooks to Carlos Allen for $20,000, which Allen says was
part of the $102,000 loan from Karen Brooks, Allen was to repay
at least that portion within 30 days of the check being written
(which would have been September 29, 2005).[1]  This additional
contradiction further hurts Allen's credibility and strengthens
the court's finding that the *Brooks Note* is a sham.  Moreover,
all three checks taken together demonstrate a pattern of Karen
Brooks frequently lending sums of money to Carlos Allen on a
short term basis and cast doubt on whether Karen Brooks and
Carlos Allen would have entered into a promissory note for any
particular loan of money.

The remaining documents and records attached to Allen's
*Motion* are receipts and invoices.  *See* Dkt. No. 79, at 20-60.
The purpose of attaching these receipts and invoices is unclear.
Perhaps it is meant as a demonstration of how Allen used the
money he alleges Karen Brooks loaned to him.  However, it appears
that the receipts and invoices were for the benefit of AFS
Mortgage, the mortgage company Brooks and Allen owned and

---

[1]  In the thirty days after this check for $20,000 was
written to Carlos Allen, over $17,000 were deposited into Karen
Brooks's bank account through Bank of America ATM machines.  *See*
Dkt. No. 79, at 14-16.  There is no way to determine whether
those deposits were made by Allen in repayment of $20,000 loan
but it could support the notation made on the bottom left corner
of Check 2127.

operated together, not a company owned and operated by Allen
personally.  *See, e.g.*, Dkt. No. 79, at 20, 23, 24.  Even though
not all of the receipts and invoices demonstrate that the
purchases were made for AFS Mortgage, Allen seems to contend that
he used the loan for AFS Mortgage.  However, this makes the
existence of the loan more questionable as well because AFS was
owned and operated by both Karen Brooks and Allen so it does not
make sense that she would loan him money to put into their
company.  Moreover, at least some of the attached receipts and
invoices for goods or services provided to AFS Mortgage seem to
reflect payments made by Karen Brooks or her involvement in
arranging for receipt of the goods or services.  *See* Dkt. No. 79,
at 21 (reflecting a hand-written note not in Allen's
handwriting), 22 (listing Ms. Brooks as the customer), 23 (mailed
to AFS, "c/o Karen Brooks").  The receipts Allen included reflect
payments from at least eleven distinct credit or debit cards so
it is unclear who was making any of the payments.[2]  These

---

[2] At least one of the purchases (*see* Dkt. No. 79, at 41) was
made with a card ending with the numbers "0204" which could be
the same account ending in "0204" that appears in Karen Brooks's
bankruptcy schedules (*see* Bankr. D. Md. Case No. 09-14994-WIL,
Dkt. No. 18, at 3).  If the attached documents were receipts of
purchases made with the money transferred by Karen Brooks to
Allen, and Karen Brooks was making the payments herself then that
undermines the allegation that the money transferred was a loan
to Allen.

receipts again seem to support the court's belief that the transfer of $25,000 from MBNA America and the transfer of $80,000 from SunTrust were made not to facilitate a loan but rather in the course of Karen Brooks moving money in jointly operating and managing AFS Mortgage with Allen.  Thus, even if the court were to consider the documents Allen attached to his *Motion* and revisit its judgments, those documents would not move the court to change its judgment or hold a new trial.

IV

ATTORNEY NEGLIGENCE

Allen argues in his *Motion* that his former attorney, Edward Gonzalez, was "incompetent" and did not file documents Allen provided him and did not timely attend Allen's deposition or spend enough time in participating in the pretrial conference. *See* Dkt. No. 79, at 6.  Allen also contends that he believes that Gonzalez committed malpractice.  *Id.*  However, such arguments do not justify the court's reconsidering its judgment or holding a new trial.  "As a general rule, parties are bound by the actions of their lawyers. . . ."  *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004).  *See also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993) (holding that parties are "held responsible for the acts and omissions of their chosen counsel").  Thus, the court will not reconsider its

22

judgment based on Allen's allegations of ineffective assistance
of counsel.

V

NO RECONSIDERATION BASED ON AFFIDAVIT OF KAREN BROOKS

Allen attached to his reply an affidavit signed by Karen

Brooks.  *See* Dkt. No. 82, Ex. 1.  In his reply, Allen said

> Debtor, just like Plaintiff, was unable to effectuate
> service upon Karen Brooks to ensure her presence at
> trial, and she therefore was not present at the time of
> trial to testify regarding the validity issues
> surrounding the Note entered into between her and Debtor.
> Debtor should not now be penalized for both parties'
> inability to serve Ms. Brooks by having his Motion for
> Reconsideration denied by the Court.

Dkt. No. 82-1 ¶ 4.  This is the second time the debtor has gotten

testimony from Karen Brooks in the form of an affidavit when he

needed it. *See Affidavit of Business Ownership of AMG Inc.*, Dkt.

No. 27, Ex. E (signed July 12, 2016, and filed December 19,

2016); *Affidavit of Karen R. Brooks*, Dkt. No. 82, Ex. 1 (signed

October 20, 2017, and filed October 20, 2017).  Additionally,

when Allen wanted documents to submit with his motion for

reconsideration, he was able to obtain them from Karen Brooks

within fourteen days of the court's judgment.

While this adversary proceeding was pending, Allen indicated

that he intended to have Karen Brooks testify at trial.  While

Allen's first pretrial statement, which he filed pro se, did not

indicate any witnesses he planned to call (Dkt. No. 33, at 10),
the next pretrial statement he filed (Dkt. No. 38) added
witnesses to be called at trial including, *inter alia*, Karen
Brooks.  Additionally, the pretrial statement filed by Gonzalez
on behalf of Allen three months later (Dkt. No. 47), listed Karen
Brooks as one of two witnesses Allen planned to call.  The court
does not find credible Allen's assertion that he could not have
successfully asked Karen Brooks to testify at trial or could not
have successfully served her with a subpoena.  This is especially
true as Allen has not filed any evidence that he attempted to
serve a subpoena to support his allegation that he did attempt to
do so.[3]  The court will not now allow Allen to introduce another
affidavit signed by Karen Brooks and reconsider the judgment
based on its contents.

---

[3]  Brooks's affidavit, appended to Allen's reply in support
of his motion (Dkt. No. 82 at 12) recites that on or about
September 23, 2005, she agreed to lend Allen approximately
$102,000 and "signed a Promissory Note along with Carlos Allen,
which detailed the terms of the agreement[.]"  However, Karen
Brooks filed a bankruptcy case (Case No. 09-14994) in the United
States Bankruptcy Court for the District of Maryland on March 24,
2009, roughly three and one-half years after she allegedly loaned
Allen $102,000 pursuant to the *Brooks Note* of September 23, 2005.
See Case No. 09-14994.  Brooks did not list the alleged
outstanding $102,000 loan to Allen as an account receivable on
her Schedule B in that case.  See Case No. 09-14994, Dkt. No.
1-1, at 4-6.  This prior inconsistent statement would cast doubt
on her credibility as a witness regarding the existence of any
debt owed to her by Allen when the Sloans made their loan in 2013
to Allen.

24

VI

ORDER

It is thus

ORDERED that the debtor's *Motion for Reconsideration of Judgement of Sept. 21, 17* is DENIED.

[Signed and dated above.]

Copies to: Debtor (by hand-mailing); all recipients of e-notification of orders; Office of United States Trustee.